UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACH HILLESHEIM,<br><br>*Plaintiff*,<br><br>v.<br><br>DMT, LLC,<br><br>*Defendant*. | Case No. _____<br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Zach Hillesheim, by and through the undersigned counsel, brings this action against DMT, LLC, a Nebraska limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1.  Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers in the hotel known as "Regency Lodge", even though such removal is readily achievable.

2.  The violations alleged in this complaint occurred at "Regency Lodge", located at 909 S 107th Ave, Omaha, NE 68114.

3.  Defendant's failure to provide equal access to "Regency Lodge" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4. Defendant's conduct constitutes an ongoing and continuous violation of the law.

5. Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal law and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7. Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8. Plaintiff Zach Hillesheim is a resident of the city of Nicollet, Minnesota. Plaintiff often travels to Omaha with his girlfriend, who grew up in Omaha and lived there until 2005. They travel together to visit family, friends, and to sightsee in the Omaha area. Plaintiff Hillesheim is moving to the Omaha area as of June 1, 2017.

9. Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a mem-

ber of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*.

10. Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery, his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11. Defendant DMT, LLC, a Nebraska limited liability company, is the lessee and operator of the real property and improvements which are the subject of this action, the hotel known as "Regency Lodge", a place of public accommodation within the meaning of the ADA, located at the street address of 909 S 107th Ave, Omaha, NE 68114.

## FACTUAL BACKGROUND

12. On July 27, 2016, Plaintiff Hillesheim attempted to patronize the hotel known as "Regency Lodge" in Omaha, Nebraska. Plaintiff and his girlfriend wished to stay at this hotel based on a recommendation.

13. Upon arrival, Plaintiff found that 4 of the 5 parking spaces reserved for persons with disabilities in the "Regency Lodge" parking lot near the lobby entrance lacked adjacent access aisles.

14. At least 1 of the 5 reserved parking spaces in the parking lot near the lobby entrance was reserved through signage posted very low to the ground.

15. Plaintiff also found no van parking spaces in the "Regency Lodge" lobby parking lot.

16. Photographs in Exhibit A to this Complaint depict the parking spaces in the "Regency Lodge" lobby parking lot as they appeared on Plaintiff's July 27, 2016 visit.

17. Plaintiff also found 5 reserved parking spaces in the outer parking lot surrounding "Regency Lodge".

18. These reserved parking spaces in the outer parking lot were marked with paint on the surface of the spaces, but they were either not reserved through posted signage or through signage posted low to the ground.

19. The concrete surface of the outer parking lot was deeply cracked and was dangerous for Plaintiff to traverse in his wheelchair.

20. When Plaintiff went to the hotel lobby to register at "Regency Lodge" he found that the service desk was situated at an inaccessible height.

21. A photograph in Exhibit B to this Complaint depicts the service counter in the lobby of "Regency Lodge" as it appeared on Plaintiff's July 26, 2016 visit.

22. When Plaintiff registered at "Regency Lodge", hotel staff assigned him an accessible room. The route to this room, however, required travelling up a steep ramp.

23. Because of the slope of the hallway leading to the room he was initially assigned, Plaintiff requested a new room, and hotel staff assigned him Room 158.

24. Room 158 had one queen bed in the room, and did not have adequate clearance on both sides of the bed.

25. The kitchenette in Room 158 was too tall for Plaintiff to use in his wheelchair.

26. Shelving in the closet near the bed in Room 158 was too tall for Plaintiff to use. The closet in Room 158 was also located near the head of the bed, allowing only a narrow parallel approach that was too narrow for Plaintiff to use.

27. Photographs in Exhibit C to this Complaint depict the area surrounding the bed, the kitchenette, and the closet in Room 158.

28. The grab in Room 158 were not adequately attached to the wall and could not provide adequate support to Plaintiff in a transfer between his wheelchair and the toilet. For example, at least on footing on one of the grab bars was missing screws that had previously attached the grab bar to the wall.

29. Photographs in Exhibit D to this Complaint depict the bathroom, and a grab bar footing, in Room 158.

30. Plaintiff was unable to use the common laundry room.

31. The path between the washing machines and dryers in the laundry room was too narrow for Plaintiff to navigate in his wheelchair.

32. A photograph in Exhibit E to this Complaint depicts the "Regency Lodge" customer laundry room.

33. The restaurant and bar area of "Regency Lodge" had customer restrooms near these amenities.

34. The men's restroom had an interior hallway that provided insufficient maneuvering clearance on the inside of the restroom for Plaintiff to independently and safely open the door and move through the doorway.

35. The toilet stall in the men's restroom appeared to be an ambulatory stall, not a wheelchair accessible stall, and lacked clear floor space for Plaintiff to make a transfer between his wheelchair and the toilet. No signage on the outside of the customer restroom indicated the presence or location of an accessible restroom.

36. The same customer restroom also lacked insulation over the metal pipes of the lavatories. Plaintiff used the sinks at the risk of burning his legs when attempting to use the sinks.

37. Photographs in Exhibit F to this Complaint depict the "Regency Lodge" customer restroom serving the lobby and restaurant and bar.

38. In light of the architectural barriers at "Regency Lodge", Plaintiff Hillesheim is deterred from visiting "Regency Lodge" in the future. Plaintiff Hillesheim intends to return to "Regency Lodge" to patronize the facility, but these architectural barriers deter him from doing so. He plans to return and patronize "Regency Lodge" when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

39. Plaintiff Hillesheim travels to Omaha on a regular basis, including multiple visits in 2016. Hillesheim is moving to Omaha by June 1, 2017. He has signed a lease on a home in Omaha. He would enjoy being able to patronize Defendant's hotel.

40. Plaintiff Hillesheim attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff Hillesheim cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

41. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

    a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

42. Congress explicitly stated that the purpose of the ADA was to:

    a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

43. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to

comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

44. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

45. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

46. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

47. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

48. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

49. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

50. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

51. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

52. Defendant has discriminated against Plaintiff on the basis of his disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Regency Lodge". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Regency Lodge" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

   a. The parking lot serving the lobby, hotel restaurant, and hotel bar had 5 parking spaces reserved as accessible parking spaces, but 4 of these parking spaces lacked adjacent access aisles, in violation of ADAAG 208.2 and 502.2.

   b. The "Regency Lodge" lobby parking lot had no van parking spaces, in violation of ADAAG 208.2.4 and 502.

c. Reserved parking spaces in the "Regency Lodge" lobby parking lot had signage posted lower than 60 inches above the parking space, in violation of ADAAG 216.5 and 502.6.

d. Upon information and belief, the outer "Regency Lodge" parking lot had 5 reserved parking spaces, but these parking spaces were either reserved through signage that was positioned lower than 60 inches above the ground, or missing signage entirely, in violation of ADAAG 216.5 and 502.6.

e. Upon information and belief, the accessible routes connecting the 5 reserved parking spaces in the outer parking lot to the "Regency Lodge" building had fallen into disrepair, with many deep cracks running through the concrete, in violation of ADAAG 206.2.1, 403.2, 302, and 303; and in violation of 28 C.F.R. § 36.211.

f. The "Regency Lodge" registration desk did not have a section no taller than 36 inches, in violation of ADAAG 227.1 and 904.4.

g. Upon information and belief, the route between the "Regency Lodge" registration desk and one of its accessible hotel rooms had a slope steeper than 1:12, in violation of ADAAG 206.2.4 and 405.2.

h. Upon information and belief, the bed in Room 158 did not have a 30-inch by 48-inch maneuvering clearance on both sides of the bed, in violation of ADAAG 224.2 and 806.2.3.

i. The kitchenette in Room 158 was taller than 34 inches above the ground, in violation of ADAAG 806.2.5 and 804.3.2.

j. Shelving in the closet in Room 158 had a reach range higher than 48 inches, in violation of ADAAG 225.2 and 811.3.

    k. Upon information and belief, the shelving near the bed in Room 158 was situated in such a way that it was enclosed on three sides, but did not have clear floor space at least 36 inches in width, in violation of ADAAG 225.2, 811.2, and 305.7.

    l. "Regency Lodge" failed to maintain required accessible features, including the grab bars in Room 158, in violation of ADAAG 224.2 and 609.8 and 28 C.F.R. § 36.211.

    m. Upon information and belief, the "Regency Lodge" laundry room did not have a 30-inch path between the washing machines and dryers, in violation of ADAAG 214, 611.2, and 305.

    n. Upon information and belief, the "Regency Lodge" laundry room did not have a washing machine no taller than 36 inches, in violation of ADAAG 214.2 and 611.4.

    o. The "Regency Lodge" customer restroom serving the lobby area and hotel restaurant and bar did not have a wheelchair accessible toilet compartment complying with ADAAG 604.8.1, in violation of ADAAG 213 and 604.8.1.

    p. The interior side of the doorway of the "Regency Lodge" customer restroom serving the lobby area lacked the 48-inch maneuvering clearance perpendicular to the doorway required by 402.2.4, in violation of ADAAG 206.2.4.

    q. The metal pipes under the sink in the "Regency Lodge" lobby area customer restroom were not insulated, in violation of ADAAG 213 and 606.5.

53.     The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Regency Lodge". To qualify as an accessible parking lot, and for a parking space to qualify an accessible

parking space, the space must be located on the shortest accessible route, marked by appropriate signage, flanked by an access aisle, and comply with sloping requirements. ADAAG 206, 208, 402, 403, 405, 406, and 502. To qualify as an accessible restroom the restroom must comply with ADAAG 304, 603, 604 and 606.

54. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Regency Lodge" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

55. Compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

56. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

57. As a person with a disability, Plaintiff Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

58. Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Regency Lodge" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of his rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101** *et seq.*

59. Plaintiff incorporates and realleges the above paragraphs.

60. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

61. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

62. Defendant has discriminated against Plaintiff and others in that she failed to make her place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Hillesheim has been de-

nied full and equal access to "Regency Lodge" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

63. Defendant has failed to take any prompt and equitable steps to remedy her discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

64. Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Hillesheim, even though removing the barriers is readily achievable.

65. Plaintiff Hillesheim plans to visit "Regency Lodge" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to "Regency Lodge" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

66. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "Regency Lodge" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Regency Lodge" until such time as Defendant cures the access barriers.

67. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

    a. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of

Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing her discriminatory practices; including an order directing Defendant to make all readily achievable alterations to her facilities so as to remove physical barriers to access and make her facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c. That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

d. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED: May 17, 2017

/s/ Padraigin L. Browne
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805
